UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLENE DANIELS,
AS NEXT FRIEND ON THE BEHALF
OF C.D. AND ANDRE DANIELS AS
NEXT FRIEND ON THE BEHALF
OF C.D.
    Plaintiffs,

Case No.: 3:15-cv-00679: BJD-JBT

vs.

DUVAL COUNTY OF PUBLIC SCHOOLS
    Defendant.
_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs, Charlene Daniels, As Next Friend On The Behalf of C.D. and Andre Daniels As Next Friend On The Behalf of C.D. in and through the undersigned counsel to file this complaint against the above named Defendant and hereby states as follows:

### JURISDICTION AND VENUE

1. Plaintiffs brings this action under the Americans with Disabilities Act 42 U.S.C. Subsection 12101, et seq, ("ADA"), §504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794, (the Rehabilitation Act"), the Persons With Disabilities Civil Rights Act MCI, §37.1101, eta, ("PDCRA"); the Individuals with Disability in Education Act 20 U.S.C.A §§1412, 1414, 1415, and Title VI of the Civil Rights Act 42 U.S.C.A §2000d.

2. This Court has jurisdiction pursuant to the following statutes:

    a.    28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the constitution, laws and treaties of the United States;

    b.    28 U.S.C. §1343 (3) and (4) which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

1

3. Venue is appropriate in this judicial district under 28 U.S. C. §1391(b), because the events that gave rise to this Complaint occurred in this district.

4. All conditions precedent to the bringing of this action have occurred or have been performed.

**PARTIES**

5. At all relevant times the Plaintiffs, Charlene Daniels, As Next Friend On The Behalf of C.D. and Andre Daniels As Next Friend On The Behalf of C.D., lived in Duval County, Florida. As such C.D. was eligible for preschool speech therapy that Duval County provides to Pre K students.

6. Defendant Duval County Public Schools, is an Agency of the State of Florida that is located in Duval County Florida.

**GENERAL ALLEGATIONS**

7. In May of 2013 C.D., an African American male who was three years old at the time, was examined by his family pediatrician. The exam was characterized as a well child examination. During the course of the examination Dr. Ceron advised the mother, Charlene Daniels that she was concerned about C.D.'s speech development and she recommended that he have an evaluation done by Duval County Public Schools for preschool speech therapy.

8. Dr. Ceron also recommended that the mother have C.D. examined by an Ear, Nose, and Throat doctor to determine whether the child had a hearing problem that was impacting his ability to articulate properly.

9. Pursuant to Dr. Ceron's recommendations, C.D. was evaluated by Wolfson's Children's Hospital on June 2, 2013. The Speech Pathologist diagnosed C.D. with a severe speech impairment and stated that he required intense speech therapy four times per week.

10. Subsequent to that, C.D. was also seen by an Ear, Nose and Throat doctor who also recommended speech therapy to determine if he needed surgery in addition to therapy.

11. The mother also followed up with Dr. Ceron's recommendation by contacting Duval Public Schools to arrange for him to have a speech evaluation by one of its Speech Language Pathologist.

12. C.D. was evaluated by Sherry Frazier on July 15, 2013. Prior to the examination being conducted the mother informed Ms. Frazier that C.D. was evaluated by Wolfson's Children's Hospital. She also informed her of the results and recommendations. Additionally, the mother advised Ms. Frazier that she signed a release so that Duval County Public Schools could obtain a copy of the reports. Withstanding this up front information, Ms. Frazier called the mother three weeks after her evaluation of C.D. to ask the mother about the results of the Wolfson's Children's Hospital evaluation.

13. On August 27, 2013 the mother participated in a telephone conference with the Duval County Public Schools ESE Department. The conversation was facilitated by Ms. Lori Medlock, an Admissions Representative, and a Duval County Public Schools ESE evaluation interpreter.

14. The purpose of the conference was to inform the mother that C.D. did not meet the requirements to be placed in the Duval County Public Schools speech therapy program. The mother then advised them that two other independent medical sources had determined that he needed speech therapy. The School Board's response to the mother was that those sources used a different criteria than they used. The conversation ended by the mother being told that if the child did not improve in six moths she could reapply for therapy.

15. The mother was extremely frustrated because the school system could not provide a specific reason why her son was denied services. She then asked if he was found to be eligi-

ble for service what type of therapy would he receive? Ms. Medlock replied that she could not comment because she was not a speech therapist.

16. Prior to the telephone conference the mother received a letter in the mail advising her what steps she could take to appeal the decision however, the letter did not advise the mother who to contact to perfect the appeal.

17. The mother conducted independent research whereby she learned that such matters were addressed by the Bureau of Exceptional Education and Student Services in Tallahassee, Florida. This agency provided the mother with a local contact person, Ms. Bowen. The mother contacted Ms. Bowen who told her that she wanted to investigate the matter. Ultimately, the mother learned that the child was denied speech therapy because the therapist determined that particular speech problem the child exhibited was common to all African Americans. Specifically, the child was not pronouncing the consonants at the end of words and Ms. Frazier, the speech pathologist, found that to be dialectical in nature. The mother informed the Defendant that neither she nor the child's father spoke in this manner and that the explanation was completely unacceptable.

18. The mother also discovered a discrepancy between the copies of C.D.'s August 15, 2013 evaluation. In one copy Ms. Frazier wrote that C.D.'s "speech was characterized by deletion of final consonants (which appears to be dialectical in nature). On another copy, this line, as well as other information, was omitted.

19. The mother raised objections to the notion that her son's speech issue was essentially a result of him being African American, thereby implying that improper speech is inherited in the African American dialect. The Defendant failed to adequately address this issue in a letter sent to the mother on October 3, 2013, where they once again denied C.D. services.

20. The Defendant agreed to provide C.D. services, but insisted that he did not need them, and that his speech was simply a manifestation of the African American dialect.

21. The mother eventually filed a civil rights claim with the Department of Education, which found reason to investigate further. C.D.'s parents made the difficult decision to not enroll their son in the pre-kindergarten program with the Defendant and instead pay for the services recommended by his doctors.

22. The Defendant continues to maintain the policy that views the failure of African American children to articulate the ending sound of words as a dialectical manifestation, and not a criteria for qualifying for services.

## COUNT I
## DISCRIMINATION BASED UPON DISABILITY
## (TITLE II of ADA)

23. Plaintiffs reincorporates by reference all of the allegations contained in paragraphs 1-21 as though fully stated herein.

24. At all relevant times C.D. was a person with a disability and he was regarded as a person with a disability by the Defendant within the meaning of 42 U.S.C. §12131(2). The Plaintiffs' son was examined by the Wolfson Children's Hospital and diagnosed with a speech impediment that could be addressed with proper speech therapy. The Defendant was aware of C.D.'s speech impediment because the mother spoke extensively to Sherry Frazier about C.D.'s speech problem. She also advised Ms. Frazier that she could obtain all of the medical reports and recommendations that she had to assist in the Defendant's assessment process.

25. C.D. was qualified to attend the Preschool Education program offered by the Duval County Public School System.

26. As a public school system, which is an entity of the State of Florida, the Defendant is subject to the requirements of Title II of the Americans with Disability Act.

5

27. The Defendant discriminated against C.D. on the basis of his disability. The Plaintiffs requested a reasonable accommodation to wit, they requested speech therapy for their son C.D. based upon the advise of the child's doctor. However, the Defendant refused to provide the requested speech therapy because it determined that the type of speech problem he manifested was typical speech for African Americans.

28. Resultantly, C.D. was unlawfully denied the opportunity to participate in the necessary speech therapy because the Defendant chose not to provide him with a reasonable accommodation.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

29. The Plaintiffs incorporates by reference as though fully stated herein all allegations contained in paragraphs 1-21.

30. C.D. is a disabled/handicapped individual as defined in 29 U.S.C.§ 705, to wit, at all relevant times he suffered from a chronic medical condition that affected a major life activity, his ability to communicate with others. His mother, Charlene Daniels communicated with the Duval County Public School System about her son's speech impediment. Withstanding her communication with the Defendant the school system refused to provide the necessary accommodation to C.D. so that he could participate in the public education available to other Duval County residents.

31. The Rehabilitation Act and its implementing regulations require that the Defendant administer programs/activities in a non-discriminatory manner.

32. C.D. was qualified to enroll in and participated in the Preschool Services offered by the Duval County Public School System. Pursuant to the recommendation of her child's pediatrician, as well as an assessment of the Wolfson Children's Hospital, his mother applied for speech therapy services. He was duly screened for the speech therapy services.

6

33. C.D. was denied the reasonable accommodation that his mother requested on his behalf. C.D.'s status as a disabled individual was the cause of him experiencing all of the actions that led to his denial of speech therapy services.

34. The Duval County Public School System is a governmental entity that receives federal financial assistance.

35. The Defendant's actions were the direct and proximate cause of the damages that the Plaintiffs sustained.

## COUNT III VIOLATIONS OF THE INDVIDUALS WITH DISABILITY IN EDUCATION ACT

36. The Plaintiffs incorporates by reference as though fully stated herein all allegations contained in paragraphs 1-21, 23, 29.

37. C.D. is a disabled/handicapped individual as defined in 20 U.S.C.§1401, to wit, at all relevant times he suffered from speech and language impairments which affected a major life activity, his ability to communicate with others. His mother, Charlene Daniels communicated with the Duval County Public School System about her son's speech impediment. Withstanding her communication with the Defendant the school system refused to provide the necessary accommodation to C.D. so that he could participate in the public education available to other Duval County residents.

38. The IDEA and its implementing regulations require that the Defendant provide a free and appropriate public education for C.D.

39. C.D. was qualified to enroll in and participated in the Preschool Services offered by the Duval County Public School System. Pursuant to the recommendation of her child's pediatrician, as well as an assessment of the Wolfson Children's Hospital, his mother applied for speech therapy services; such services were necessary for providing an appropriate education for C.D. He was duly screened for the speech therapy services.

40. C.D. was denied these appropriate services that his mother requested on his behalf. The services the Defendant offered were minimal and predicated on its belief that C.D. did not need any services, and thus were not appropriate for C.D.'s educational needs based on the recommendation of his health care providers.

41. Resultantly, C.D.'s parents chose not to enroll him in the Defendant's pre-kindergarten program and had to expend money in order to secure his needed services at another institution.

42. The Duval County Public School System is a governmental entity that receives federal financial assistance.

43. Resultantly, C.D. was unlawfully denied the opportunity to a free and appropriate public education in violation of the IDEA.

## COUNT IV
## VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT

44. The Plaintiffs incorporates by reference as though fully stated herein all allegations contained in paragraphs 1-21.

45. C.D. is a member of a protected class; he is an African American male student within the jurisdiction of the Defendant.

46. Under the IDEA, ADA and Rehabilitation Act he qualified for accommodations and services to correct his disability. Specifically, his primary health care provider, and Wolfson Children's Hospital diagnosed C.D with a severe speech impairment that required intense speech therapy at least four times a week.

47. The Defendant evaluated C.D. according to its established policy, and found that he did not qualified because of his race. To wit, according to the Defendant's policy, C.D.'s speech was simply a result of him being African American and not due to a speech im-

8

pairment. In other words, the Defendant's policy assumed that improper speech was endemic to the speech of African American students.

48. The Defendant's policy did not use the same standard for evaluating non-African American students as it did for African American students, specifically C.D. As a result, other non-African American students who presented with the same or similar issues were not denied speech therapy services denied to C.D. and other African American students.

49. After being denied appropriate and necessary services, C.D.'s mother filed a complaint with the civil rights office of the Department of education, and the Department found sufficient evidence warranting an investigation.

50. The Defendant conducts programs and activities that receive Federal financial assistance. C.D. was denied access into such programs or activities because of his race.

51. The Defendant's actions toward C.D. and policy are in violation of Title VI of the Civil Rights Act.

## **DAMAGES**

**WHEREFORE**, the Plaintiffs request that the Court enter judgment against the Defendant providing the following relief:

a. Compensatory damages in an amount in excess of $80,000, exclusive of cost and enters that the Plaintiffs might be entitled to.
b. An order placing the Plaintiffs in the position he would have been in had there been no violation of his rights.
c. An order enjoining/restraining the Defendant from further acts of discrimination.
d. An award of interest and reasonable attorney fees.
e. Any and all other relief that is available under the law or that the court may find appropriate.

CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy was filed using the electronic filing and a copy served upon Ashley Benson, Esquire, Office of General Counsel, City of Jacksonville, 117 W. Duval Street, Suite 480, Jacksonville, FL 32202 on this 27th day of August 2015.

/s/ Jerry Girley
Jerry Girley, Esquire
Florida Bar No: 35771
The Girley Law Firm, PA
125 E. Marks Street
Orlando, FL 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com